# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4650 | **DATE** | 3/10/2003 |
| **CASE TITLE** | Enviro Tech vs. US EPA | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The EPA's motion for summary judgment (R. 8-1) is granted, and ETI's motion for summary judgment (R. 14-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ENVIRO TECH INTERNATIONAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 4650 |
| ) | |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER



AMY J. ST. EVE, District Judge

Defendant the United States Environmental Protection Agency ("EPA") has moved for summary judgment on Plaintiff's claim under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking documents relating to the EPA's investigation into the toxicity of n-Propyl Bromide. Plaintiff Enviro Tech International, Inc. ("ETI") has cross-moved for summary judgment. For the reasons discussed below, the EPA's motion for summary judgment is granted, and ETI's motion for summary judgment is denied.

## BACKGROUND

The EPA's Global Programs Division ("GPD") has an initiative known as the Significant New Alternatives Policy ("SNAP") program, which seeks to identify and encourage the use of safe alternatives to ozone-depleting substances. (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶ 3.) One of the chemicals the SNAP program is evaluating is n-Propyl Bromide ("nPB"). (*Id.*) In 2001, the SNAP program contacted ICF Consulting of Fairfax, Virginia to analyze the scientific literature addressing the toxicity of nPB and to recommend a workplace exposure limit for the

chemical. (*Id.* ¶ 4.) EPA staff worked with ICF Consulting to develop a draft report, and in May 2002, a final draft report was made available to the public for review and comment. (*Id.*)

ETI is an Illinois-based corporation that markets nPB-based industrial solvents under the trade name Ensolv. (*See* R. 19-1, Def.'s LR 56.1(b)(3)(A) Resp. ¶ 1.) On January 23, 2002, ETI made a FOIA request to the EPA for all documents concerning "the toxicity or investigation/evaluation of the toxicity of n-propyl bromide." (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶¶ 1-2.) The FOIA request was addressed to Margaret Sheppard, an environmental scientist in the GPD.

After she received the FOIA request, Ms. Sheppard contacted ETI to seek clarification concerning the scope of the request. (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶ 6.) She confirmed that ETI's FOIA request was limited to the SNAP program's evaluation of nPB. (*Id.*) Three EPA staff members were the principal employees assigned to work on the SNAP program's evaluation of nPB -- Ms. Sheppard, Jeff Cohen and Erin Birgfeld. (*Id.* ¶ 7.) These employees searched for responsive documents in their individual paper files, group files within the SNAP program's offices, their desktop computers, the SNAP program's local area network, and their electronic mail systems. (*Id.*)

On February 14, 2002, the EPA granted in part and denied in part ETI's FOIA request. The EPA released copies of 31 documents and withheld 49 documents. The EPA withheld two documents containing confidential business information pursuant to FOIA Exemption 4, 5 U.S.C. § 552(b)(4), and 47 documents covered by the deliberative process privilege pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5). (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶ 9.) The

EPA also provided ETI with an index (commonly referred to as *Vaughn* index) describing each of the withheld documents and explaining the reasons for withholding. (*Id.*)

On March 5, 2002, ETI filed an administrative appeal with the EPA's FOIA office, and that appeal was forwarded to the EPA's Office of the General Counsel for review. (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶ 11.) On April 9, 2002, the EPA released eleven documents previously withheld; released four portions of four other documents previously withheld; and clarified its February 14, 2002 response. (*Id.* ¶ 12.)

Pursuant to the EPA's regulations, the EPA's Office of the General Counsel referred the documents withheld under FOIA Exemption 5 to the EPA Office of Communications, Education, and Media Relations ("OCEMR") for a determination whether the public interest would be served by a discretionary disclosure of the documents at issue. (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶ 14.) On June 19, 2002, OCEMR determined that the public interest would not be served by the disclosure of the documents. (*Id.*) On June, 20, 2002, the EPA's Office of the General Counsel denied ETI's administrative appeal. (*Id.* ¶ 15.)

ETI filed suit challenging the EPA's denial of its FOIA request on June 28, 2002. At issue in this lawsuit are the following 37 documents from the EPA's *Vaughn* index: 3, 4, 6-12, 16-19, 21-26, 31-34, 36-43, and 45-49. (*See* R. 19-1, Def.'s LR 56.1(b)(3)(A) Resp. ¶ 14.) Documents 3, 6, 11, 26, 29, 31 and 34 are described as draft reports prepared by ICF Consulting for use in the SNAP program's evaluation of nPB. (*Id.* ¶ 15.) Documents 4, 7-10, 12, 16, 25, 32, 33, 36, 37 and 42 are described as memoranda transmitting the draft reports prepared by ICF Consulting. (*Id.*) Documents 17, 23 and 24 are described as email messages between the SNAP program and the United States Centers for Disease Control. (*Id.* ¶ 16.) Documents 18, 19, 21

and 22 are described as email messages between the EPA and ICF Consulting. (*Id.*) Documents 38 and 39-41 are described as drafts of notices of proposed rulemaking concerning nPB. (*Id.* ¶ 17.) Finally, documents 46-49 are drafts of multimedia presentations prepared by the SNAP program concerning the evaluation of nPB. (*Id.* ¶ 18.)

## ANALYSIS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

The court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). The court accepts the non-moving party's version of any disputed

4

facts but only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

The courts typically grant summary judgment to the defendant in a FOIA case when the government agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the party seeking disclosure. *See Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). In order to discharge this burden, the "defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *National Cable Television Ass'n, Inc. v. Federal Communications Comm'n*, 479 F.2d 183, 186 (D.C. Cir. 1973).

## I. PROCEDURAL AND TECHNICAL ARGUMENTS FOR DISCLOSURE

ETI raises a series of procedural or technical reasons why the EPA has not satisfied its burden under FOIA and why the documents at issue should, therefore, be disclosed. *First*, ETI suggests that the documents at issue should be disclosed because the EPA's denial of the FOIA request was signed by Ms. Sheppard, an EPA staff person, rather than an EPA division director and the denial was, therefore, ineffective. EPA regulations confirm that the authority to deny FOIA requests "may be re-delegated only to persons occupying positions not lower than division director or equivalent." 40 C.F.R. § 2.113(b). ETI cites no authority, however, suggesting that the failure to comply with Section 2.113 or other similar agency regulations mandates disclosure. Moreover, as the EPA points out, division director Druscilla Hufford did in fact authorize the

denial of ETI's FOIA request. Indeed, Ms. Sheppard signed the February 14, 2002 letter denying ETI's FOIA request on behalf of Ms. Hufford. (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶ 9.)[1]

***Second***, ETI argues that the EPA's search for documents responsive to the FOIA request was inadequate. Specifically, ETI complains that the EPA contacted just three persons in connection with its search for responsive documents even though other persons worked on the evaluation of nPB.

The EPA bears the burden of establishing that its search for documents was adequate. *See Becker v. Internal Revenue Serv.*, 34 F.3d 398, 405 (7th Cir. 1994). There is no requirement, however, that the government conduct an exhaustive search for every document conceivably responsive to a FOIA request. *See Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (the government need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist); *Marks v. United States Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (the government need not search every division or office in response to a FOIA request when the agency believes responsive documents are likely to be located in one place). Instead, the government discharges its responsibility under FOIA where it makes "a good faith effort to conduct a search for the requested records, using methods which can be reasonably

---

[1] ETI suggests that it lacks knowledge to admit or deny whether the denial was signed by Ms. Sheppard on behalf of Ms. Hufford because it "has not been able to depose" her. (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶ 9.) ETI's refusal to admit or deny this and other proposed undisputed facts on that basis is not well taken. *See* LR 56.1(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). If, as ETI claims, it needed to depose Ms. Hufford in order to respond to the EPA's statement of undisputed facts, ETI was free to seek leave to conduct discovery pursuant to Federal Rule of Civil Procedure 56(f). In fact, ETI did obtain time to conduct discovery before its response was due to the EPA's motion for summary judgment, but ETI apparently did not avail itself of this window of opportunity to depose Ms. Hufford.

expected to produce the information requested." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The information supplied by the EPA confirms that its search was adequate. ETI's FOIA request was limited to documents relating to the EPA's investigation by OAR into the toxicity of nPB. (*See* R. 24-1, Pl.'s LR 56.1(b)(3)(A) Resp. ¶ 6.) At the time of the request, there were three principal EPA staff members assigned to that investigation -- Ms. Sheppard, Mr. Cohen and Ms. Birgfeld. (*Id.* ¶ 7.) ETI admits that Ms. Sheppard, Mr. Cohen and Ms. Birgfeld were involved in the SNAP program's evaluation of nPB but suggests that other employees might reasonably be expected to have documents responsive to its FOIA request. (*Id.*) Significantly, however, ETI does not provide evidence that other EPA employees were involved in the OAR's investigation of nPB and were, therefore, reasonably likely to have documents responsive to ETI's FOIA request.

In sum, ETI has failed to supply evidence that a more extensive search would have uncovered additional documents responsive to its FOIA request. *See, e.g., Patterson v. Internal Revenue Serv.*, 56 F.3d 832, 841 (7th Cir. 1995) ("[I]n order to survive a motion for summary judgment, Patterson still had the burden to show 'that the agency might have discovered a responsive document had the agency conducted a reasonable search.'"). Nor has ETI shown that the EPA conducted its search in bad faith. *See, e.g., Miller v. United States Dept. of State*, 779 F.2d 1378, 1381 (8th Cir. 1985) ("[O]nce the agency has shown by convincing evidence that its search was reasonable, *i.e.*, that it was especially geared to recover the documents requested, then the burden is on the requester to rebut that evidence by a showing that the search was not in fact

in good faith.") (cited with approval by *Patterson*, 56 F.3d at 841). Accordingly, ETI's complaints about the adequacy of the EPA's search for documents fail.

*Third*, ETI contends that disclosure is warranted because the EPA has failed to explain why the public interest is served by withholding the documents at issue. The EPA is not required to supply such reasons, however, under the applicable EPA regulations. Instead, those regulations simply state that in response to FOIA requests the EPA must make documents available to the public unless it determines that the "public interest would not be served by disclosure." 40 C.F.R. § 2.113(a)(2). In this case, the EPA has submitted a declaration stating that the Agency had determined that further disclosures would not serve the public interest in this case. (*See* R. 9-1, Def.'s LR 56.1(a)(3) Statement, Ex. F, Friedrich Decl.)

ETI also suggests that the EPA violated its regulations because OCEMR was not consulted about ETI's FOIA request until after the EPA denied the request. The EPA points out, however, that it obtained OCEMR approval prior to issuing its June 20, 2002 final appeal determination concerning ETI's FOIA request, which was all that EPA regulations required at the time. *See* 40 C.F.R. § 2.115(b).

*Fourth*, ETI argues that the *Vaughn* index and declarations supplied by the EPA do not describe the withheld documents in sufficient detail. Further, ETI argues that the index does not explain why portions of the documents should not be disclosed and suggests that the EPA is trying to conceal raw data which is not protected under the deliberative process privilege.[2]

---

[2] Significantly, ETI attacks the EPA's *Vaughn* index and declarations as well as the substance of the EPA's deliberative process privilege claims. The Court addresses the former here and the latter in Section II, *infra*.

8

In assessing the EPA's evidentiary submissions, the Court must consider whether the *Vaughn* index and accompanying declarations provide a sufficient description of the contested information to establish that the information falls within the category of the claimed exemption. *See Terkel v. Kelly*, 599 F.2d 214, 217 (7th Cir. 1979). In making this determination, the Court should examine whether the *Vaughn* index and declarations: (1) describe the withheld documents and the justifications for nondisclosure with reasonably specific detail; (2) demonstrate that the information withheld logically falls within the claimed exemption; and (3) are not controverted by either contrary evidence in the record or by evidence of bad faith. *See Kimberlin v. Dept. of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985). Summary judgment in an agency's favor is proper when the *Vaughn* index and declarations are clear, specific, and reasonably detailed, the information is not contradicted, and there is no evidence of agency bad faith. *See Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992) ("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned.").

Having reviewed the *Vaughn* Index and accompanying declarations submitted by the EPA, the Court concludes that they are sufficiently detailed to carry the EPA's burden. The *Vaughn* index and declaration identify the specific documents withheld, describe the information they contain, and do so in a detailed, non-conclusory manner. Moreover, the *Vaughn* index and declarations do explain whether the documents contain reasonably segregable information that may be released. Indeed, the EPA has released portions of sixteen of the documents at issue. (*See* R. 19-1, Def.'s LR 56.1(b)(3)(A) Resp. ¶ 14.) Thus, contrary to ETI's suggestion, the EPA's document index is sufficiently detailed to satisfy its burden under FOIA.

## II. ETI'S SUBSTANTIVE ARGUMENTS FOR DISCLOSURE

ETI also argues that the documents should be disclosed because they are not covered by any of the statutory exemptions to FOIA. Under FOIA, the federal government is required to make its records available to the public unless the specific records sought fall within one of the nine statutory exemptions. *See United States Dep't of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 495, 114 S.Ct. 1006, 1012, 127 L.Ed.2d 325 (1994). Here, the EPA argues that the documents at issue are shielded from disclosure by the deliberative process privilege pursuant to FOIA Exemption 5.

Exemption 5 creates an exemption from FOIA's disclosure requirements for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The courts have held that FOIA Exemption 5 incorporates civil discovery privileges, including the deliberative process privilege. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799, 104 S.Ct. 1488, 1492, 79 L.Ed.2d 814 (1984); *see also Environmental Protection Agency v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973) (Congress recognized in enacting FOIA that the "efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'") (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)).

The purpose of FOIA Exemption 5 is to protect the internal decision making processes of the agency and safeguard the quality of agency decisions by preserving the confidentiality of deliberations and encouraging frank and open discussion before a final agency decision is determined. *See National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132,

150-151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). The privilege serves to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Under FOIA Exemption 5, the deliberative process privilege exempts "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Sears, Roebuck & Co.*, 421 U.S. at 153, 95 S.Ct. at 1517. *See also Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1070 (D.C. Cir. 1993); *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990). Thus, the privilege protects documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated. *Sears, Roebuck & Co.*, 421 U.S. at 150, 95 S.Ct. at 1516.

To qualify for the deliberative process privilege, a communication must be both predecisional and deliberative. *See Becker*, 34 F.3d at 403; *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993); *see also Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) ("[A] document must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'") (quotation omitted). The agency invoking the privilege has the initial

burden of showing that it applies. *See Becker*, 34 F.3d at 403; *King v. Internal Revenue Serv.*, 684 F.2d 517, 519 (7th Cir. 1982). The privilege is narrowly construed and does not protect, for example, documents that merely explain an agency's final decision. *See Matte of Wade*, 969 F.2d at 247. Further, purely factual material that does not reflect the agency's deliberative process is generally not protected from disclosure. *See Bobkoski v. Board of Educ. of Cary Consol. School Dist. 26*, 141 F.R.D. 88, 91 (N.D. Ill. 1992).

The 37 documents at issue clearly satisfy both elements of the deliberative process privilege under FOIA Exemption 5. The documents are predecisional because they were prepared to assist the agency in preparing the recommendation for a workplace exposure limit for nPB and the documents were generated before the EPA made available to the public for review and comments the final draft report containing that recommendation. *See In re Consolidated Litig. Concerning Int'l Harvester's Disposition of Wi. Steel*, Nos. 81 C 7076, 82 C 6895, 85 C 3521, 1987 WL 20408, at *6 (N.D. Ill. Nov. 20, 1987) (documents are predecisional if they were "generated while the agency was working toward a decision, not after the decision was reached").

Further, the documents are deliberative because they relate to the process by which the EPA arrived at the final draft report. The documents reflect internal discussions of proposals, suggestions, and recommendations as well as early versions of the final draft report eventually made available to the public. Such materials are routinely shielded from disclosure by the deliberative process privilege under FOIA Exemption 5. *See, e.g., King*, 684 F.2d at 519 ("Generally, draft documents are considered predecisional and are exempted from disclosure if they are deliberative in nature."); *Petroleum Information Corp. v. United States Dep't of Interior*,

976 F.2d 1429, 1435 (D.C. Cir. 1992) (documents reflecting an agency's preliminary position about how to exercise policy discretion are privileged).

Nonetheless, ETI raises several different challenges to the EPA's invocation of the deliberative process privilege under FOIA Exemption 5. ETI argues that the EPA cannot withhold these documents under the deliberative process privilege because the EPA lacks the statutory authority to regulate workplace exposure limits for nPB. ETI contends that the Occupational Safety and Health Administration, not the EPA, has the statutory authority to regulate workplace exposure limits for nPB. According to ETI, the analytical framework for the deliberative process privilege assumes that the government agency has the power to make the decision that is the subject of deliberation. ETI argues that if the government agency lacks authority to make the decision in question the documents cannot be predecisional.

ETI cites no authority outside the context of the law enforcement purpose exemption, however, for the proposition that the *ultra vires* decisions by a government agency are not covered by the deliberative process privilege. ETI relies mainly on *Weissman v. Central Intelligence Agency*, where the Court of Appeals for the District of Columbia held that the Central Intelligence Agency ("CIA") could not invoke the "law enforcement purpose" exemption under FOIA because the CIA was barred by law from carrying out any law enforcement activity. 565 F.2d 692, 694-96 (C.A.D.C. 1977). *Weissman*, however, is inapposite.

On its face, the law enforcement exemption is limited to "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Thus, an essential element of the law enforcement exemption is the requirement that the documents must have been generated to serve that specific purpose. *See, e.g., John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 155

n. 6, 110 S.Ct. 471, 477 n.6, 107 L.Ed.2d 462 (1989). In *Weissman*, the Court of Appeals held that the documents could not have been generated for a law enforcement purpose because the CIA was barred by law from undertaking such activities. *Id.*, 565 F.2d at 695.

The deliberative process privilege under Exemption 5, however, lacks an equivalent hook that might restrict the exemption to only those documents relating to specifically authorized agency activities. Exemption 5 itself contains no language restricting its application to only those agency activities specifically authorized by Congress. Further, ETI has cited no authority purporting to limit the deliberative process privilege to only authorized agency decisions. *Weissman* itself does not support such a limitation on the deliberative process privilege. Indeed, subsequent cases have refused to extend the *Weissman* rule relating to *ultra vires* activities to other FOIA exemptions. *See, e.g., Navasky v. Central Intelligence Agency*, 499 F.Supp.269, 274 (S.D.N.Y. 1980 ("[A] claim of activities *ultra vires* the CIA charter is irrelevant to a an exemption 3 claim."); *Edwards v. Central Intelligence Agency*, 512 F.Supp. 689, 694 (D.D.C. 1981) ("The Court concludes that the CIA acted within its powers, but assuming that conclusion is incorrect, the information is still exempt [under FOIA Exemptions 1 and 3].").

ETI also argues that the EPA waived any protection over the documents at issue by producing a memorandum that purportedly summarizes the EPA's evaluation of nPB. ETI cites a memorandum prepared by Jeffrey R. Holmstead of the EPA dated July 19, 2002 that explains, among other things, why the EPA expanded its review to determine a recommended workplace exposure limit for nPB, whether setting a workplace exposure limit is within the EPA's authority, and the scientific rationale for the EPA's proposed workplace exposure limit to 25 parts per million for nPB. (*See* R. 16-1, Pl.'s Supp. Mem. in Support of Mot. for Summ. J., Ex. 1.)

Essentially, ETI contends that there is no justification for the EPA's continued refusal to disclose the 37 documents at issue because Mr. Holmstead's memorandum has already made public the EPA's deliberations.

As the EPA points out, however, the courts have refused to find that the discretionary disclosure of a document effectuates a waiver of other related documents. *See, e.g., Mobil Oil Corp. v. United States Environmental Protection Agency*, 879 F.2d 698, 701 (9th Cir. 1989) ("Implying such a waiver could tend to inhibit agencies from making any disclosures other than those explicitly required by law because voluntary release of documents exempt from disclosure requirements would expose other documents in the litigation to risk of disclosure. An agency would have an incentive to refuse to release all exempt documents if it wished to retain an exemption for any documents."). The waiver rules governing the deliberatively process privilege are strictly construed and apply only where the document released summarizes exactly the contents of other withheld documents. *See, e.g., Washington Post Co. v. United States Dep't of Air Force*, 617 F. Supp. 602, 605 (D.D.C. 1985) (finding waiver because the disclosed document "presented in outline form the entire contents" of the withheld document). In this case, however, ETI has made no showing that Mr. Holmstead's memorandum summarizes the contents of the remaining 37 documents at issue. Therefore, there is no basis for holding that the EPA has waived the deliberative process privilege over those documents by voluntarily disclosing Mr. Holmstead's memorandum.[3]

---

[3] ETI also argues that the EPA waived any privilege over the documents at issue because Dr. Karl Rozman reviewed a draft report on nPB by ICF Consulting. Dr. Rozman's affidavit does not explain what draft report he reviewed, the contents of the report, the persons with whom he spoke from ICF Consulting, or the subject of their discussions. Such vague allegations are insufficient to create a genuine issue of material fact.

## **CONCLUSION**

The EPA's motion for summary judgment (R. 8-1) is granted, and ETI's motion for summary judgment (R. 14-1) is denied.

DATED: March 10, 2003          ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge